758 So.2d 1003 (2000)
STATE of Louisiana, Appellee,
v.
Elbert WILLIAMS, Appellant.
No. 33,201-KA.
Court of Appeal of Louisiana, Second Circuit.
May 15, 2000.
*1005 John Michael McDonald, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney Catherine M. Estopinal, Hugo A. Holland, Jr., Assistant District Attorneys, Counsel for Appellee.
Before STEWART, DREW and SAMS (PRO TEM), JJ.
STEWART, J.
The defendant, Elbert Williams, was tried by jury and convicted of one count of second degree murder and two counts of armed robbery in violation of La. R.S. 14:30.1(A)(2) and La. R.S. 14:64. He was sentenced to life imprisonment for second degree murder, and two 50-year imprisonment sentences for the two armed robbery convictions. All three sentences were imposed without benefit of probation, parole or suspension of sentence, and were ordered to run concurrently. The defendant now appeals. We affirm the defendant's conviction and sentence.

FACTS
On August 12, 1995, a few minutes before one o'clock in the morning, the employees of the Thrifty Liquor Store on Greenwood Road in Shreveport were preparing to close the store for the night. *1006 Franklin Tesnear worked as a stocker with Russell "Rusty" Coleman, and Colette Shinberger was the cashier and acting manager. Three black male customers remained in the store. While Shinberger helped one of the customers at the register, Coleman waited on the turnstile at the front of the store to lock the doors. Tesnear was in the stockroom.
Tesnear and Shinberger heard three gunshots in the front of the store. Tesnear, standing in the stock room doorway, saw Bobby Hampton and the defendant, Elbert Williams, both pointing guns at Coleman, who was on the floor. The defendant came around Shinberger's register and pointed a gun at her. Another man, later identified as 16-year-old Michael Williams, was also at the register and was unarmed. The defendant and Michael Williams ordered Shinberger to put the money from the registers in a paper bag.
Hampton put the gun to Tesnear's head, and said, "Get down or I'll kill you." While Shinberger emptied the cash register, Hampton took Tesnear to the front of the store and forced him to break into the manager's office. Tesnear forced the locked money drawer open, under threats of death by Hampton. Hampton took the money out of the drawer and put it in his pocket. Hampton told Tesnear to sit there in the manager's office, but Tesnear managed to slide away out of the office to hide for safety. Before leaving, the robbers took some of the expensive liquor from behind the counter. Hampton left the store first and told the defendant and Michael Williams to "get rid of them." The defendant and Michael Williams left the store after Hampton. The murder-robbery lasted about ten minutes.
Physical evidence at the scene corroborated the two eyewitnesses' accounts that three shots were fired, and also verified Coleman's location at the time he was shot. Forensic evidence showed that Coleman's death resulted from hemorrhage from three gunshot wounds which entered the back and exited the front of his body. One bullet was recovered from the body. There were two bullets holes in the front door.
Tesnear made a positive in-court identification of the defendant as the robber who pointed a gun at Coleman and then robbed Shinberger at gunpoint. Tesnear remembered the defendant's appearance because he had made eye contact with the defendant prior to the robbery during their conversation about which beer was cheaper. At trial, Tesnear admitted that he had originally given investigating officers a different account as to who shot Coleman. Tesnear initially told the investigating officers that the defendant shot Coleman. However, later Tesnear remembered the crimes more clearly and concluded that it was Hampton, rather than the defendant, who fired the fatal shots.
Shinberger also made a positive in-court identification of the defendant as the robber who pointed a gun at her and took the money from the register. At trial, she also identified the tattoo on the defendant's hand as the tattoo which she remembered seeing a portion of on the night of the crimes, and which she attempted to draw for the police. Photographs introduced into evidence of the defendant, Hampton, and Michael Williams, taken at the time of their arrests, corroborated Shinberger's descriptions of Hampton and the defendant, including the description of the defendant's tattoo.
On February 26, 1998, a jury found the defendant guilty as charged of second degree murder and guilty of two counts of armed robbery. He was sentenced to life imprisonment for second degree murder, and two 50-year imprisonment sentences for the two armed robbery convictions. All three sentences were imposed without benefit of probation, parole or suspension of sentence, and were ordered to run concurrently.

DISCUSSION
By his first assignment of error, the defendant contends that the trial court *1007 erred in allowing evidence of the identification of the defendant in the photographic lineup, and further erred in allowing the witnesses to identify the defendant in court pursuant to the tainted initial eyewitness identification. The defendant argues that the pre-trial identification was tainted and should not have been introduced into evidence. Specifically, he argues that the photographic lineup was impermissibly suggestive because the other photographs were of persons with substantially different characteristics from him.
A line-up is unduly suggestive if the procedure focuses attention on the defendant. State v. Savage, 621 So.2d 641 (La.App. 2d Cir.1993), writ denied, 93-2850 (La.9/2/94), 642 So.2d 1282. Despite the existence of a suggestive pre-trial identification, an in-court identification may be permissible if there does not exist a very substantial likelihood of irreparable misidentification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). If there is a suggestive identification procedure, the courts must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification does present a substantial likelihood of misidentification. These factors include: (1) the opportunity of the witness to view the criminal at the scene of the crime; (2) the witness's degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Manson v. Brathwaite, supra. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. State v. Jones, 31-613 (La.App. 2d Cir. 1999), 733 So.2d 127, writ denied, 748 So.2d 434 (La.10/01/99); State v. Savage, supra.
A review of the record reveals that the lineups shown to Tesnear and Shinberger were not suggestive in nature. Both witnesses and two detectives testified that proper procedure was followed in viewing the lineups. No undue attention was focused on the defendant by the officers, and no suggestions were made as to which suspect should be chosen. No instructions were given regarding facial hair. In fact, there was no indication that any of the robbers were even included in the lineups. The witnesses also viewed the lineups separately, so they were not influenced by each other's choices.
Also, photographs used in the defendant's lineup were not unduly suggestive. The photographs of the persons in the lineup were similar in appearance to the defendant, and the defendant was not distinguished by any substantially different physical characteristic. Four of the six photographs in the lineup, including the picture of the defendant, were of persons with facial hair. As such, it appears clear from the record that the defendant was not singled out in any suggestive manner in the lineups, and the lineup identifications were reliable, and were, therefore, admissible.
Even if the lineups were to be considered impermissibly suggestive, the record supports the conclusion that both of the in-court identifications were permissible because there does not exist a very substantial likelihood of misidentification, based upon an analysis of the Manson v. Brathwaite, supra, factors. (1) Both witnesses had sufficient opportunity to view the defendant at the scene of the crime. Tesnear was able to see the defendant well from his hiding place, and he made eye contact with the defendant when they talked before the crime. Shinberger could not help but look closely at the defendant as he pointed the gun at her and as she begged for her life. (2) Both were deeply attentive to the criminals during the crime, as can be surmised by the detail of their descriptions of the criminals, including the defendant's tattoo, and from their detailed accounts of the crimes. (3) Both witnesses gave accurate descriptions of the criminals prior to the lineups, as shown by a comparison *1008 of Shinberger's descriptions of the suspects to the photographs of the suspects at the time of arrest, and by the fact that Tesnear's identification of the defendant was largely consistent with Muller's testimony. (4) Both were very certain at trial that the defendant was the criminal. Lastly, the length of time between the crime and the confrontation at trial was about three years, which factor could be weighed either for or against the reliability of the in-court identifications.
The above analysis of the Manson v. Brathwaite factors proves that the in-court identifications of the defendant were permissible because there does not exist a very substantial likelihood of misidentification, even if the lineups were to be considered unduly suggestive.
Having found the lineups not to be suggestive and the in-court identifications to be reliable, and therefore due process to have been upheld, it is clear that the trial court did not err in denying the defendant's motion to suppress the line-up identifications. This assignment of error is without merit.
By his second assignment of error, the defendant argues that if the eyewitness identifications are considered unreliable, then the defendant's convictions were based solely on circumstantial evidence. As such, the defendant contends that such evidence was legally insufficient to sustain a verdict of guilty. The defendant contends that the state must prove every element of the crimes by the exclusion of every reasonable hypothesis of innocence to support the convictions. The defendant asserts that the remaining testimony is void of any proof regarding the essential elements of the crimes. He argues that the record does not prove that cash was taken. Furthermore, the defendant contends that the evidence only revealed that the defendant was seen on the night of the crimes with bags. The defendant also points out that no weapons were recovered and no fingerprints were lifted.
The proper standard of appellate review for a sufficiency of evidence claim under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La. *1009 App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Rogers, 494 So.2d 1251 (La. App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987).
In cases such as this, involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La.App.2d Cir.5/8/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/6/96), 684 So.2d 925.
The defendant was charged with second degree murder under La. R.S. 14:30.1(A)(2), which, in pertinent part, defines second degree murder as the killing of a human being when the offender is engaged in the perpetration of armed robbery, even though he has no intent to kill or to inflict great bodily harm. Thus, the finding of sufficient evidence of the defendant's perpetration of an armed robbery, and a killing of a human being during the armed robbery, are the essential elements of the crime of the defendant's conviction of second degree murder.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64. All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24.
Evidence was found to be sufficient to support a defendant's conviction for armed robbery where two witnesses were present when a robbery occurred, both were cross-examined in great detail regarding reliability of their identifications of the defendant, and one witness stated that he looked the defendant "dead in the eye" and could never forget him. State v. Holmes, 590 So.2d 834 (La.App. 4th Cir. 1991). Also, evidence, including positive identification by two witnesses, was held to be sufficient to sustain a conviction for armed robbery, despite alibi evidence. State v. Hawkins, 572 So.2d 108 (La.App. 1st Cir.1990). Also, in State v. Richard, 550 So.2d 300 (La.App. 2d Cir.1989), there was sufficient evidence of armed robbery and of the defendant's identity as perpetrator, even though the state did not present either the weapon or other physical evidence linking the defendant to the robbery, and despite the defendant's denial and alibi evidence. In that case, the store employee identified the defendant and testified that he threatened her with a revolver and took money, other witnesses testified regarding the defendant's clothing and subsequent flight, and there was evidence that the defendant was near the scene of robbery when it was committed. State v. Richard, supra.
In the instant case, viewing the evidence in the light most favorable to the prosecution, the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime of second degree murder.
First, the record revealed that Coleman died as the result of three gunshot wounds. Moreover, the record revealed that money (something of value) was taken from the control of two employees of the Thrifty Liquor (the control of another) which belonged to another (the owner of Thrifty Liquor), by threats of death and the apparent ability and willingness to kill, as evidenced by the killing of Coleman (use of force or intimidation) while armed with guns (dangerous weapons).
In similar cases, where a defendant claims that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. As *1010 discussed above, the defendant was identified several times by the two eyewitnesses to the crimes. Both Shinberger and Tesnear identified him from photographic lineups, and both made positive in-court identifications of the defendant as the gunman who robbed Shinberger of the money from the registers. Both witnesses testified that the defendant was present during, and involved in, Hampton's armed robbery of money from Tesnear. The jury heard this evidence and evaluated the weight to be given that testimony. We give great deference to the trial court's credibility determinations.
Also, circumstantial evidence supports the conclusion that the defendant was a perpetrator of, and a principal in, the armed robbery of the two employees, during which Coleman was murdered. Several witnesses placed the defendant at the crime scene and with the two other robbers immediately before the crimes. Witnesses also related that immediately after the time the crimes occurred, the defendant and the two other robbers secretly divided the money. One witness actually saw that one of the bags was full of paper money. Again, we afford great deference to the trial court's credibility determinations regarding witness testimony.
Other evidence showed that the defendant and the two other robbers all purchased cars the day of the robbery, and that the defendant tried to conceal the car purchase and to confuse the paperwork by switching car tags. A large sum of money was found hidden in the defendant's residence in the room of the defendant's younger brother, Michael Williams, who was also identified by Tesnear as a robber. Receipts found in the defendant's car indicate that recent substantial purchases were made. Even expensive liquor similar to the liquor taken during the robbery was given to a witness immediately after the crimes while the robbers divided the money. The jury heard all of this evidence and weighed it accordingly. Thus, we agree with the trial court's determination that the state successfully negated any reasonable probability of misidentification of the defendant as a perpetrator of, and a principal in, the armed robbery of the two employees, during which Coleman was killed. The evidence is sufficient to find the defendant guilty of second degree murder.
Likewise, a review of the record also shows that the facts established by the direct and circumstantial evidence are sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of both counts of armed robbery. Upon review of the record, we find that the state succeeded in negating any reasonable probability of misidentification of the defendant as a perpetrator of, and a principal in, two counts of armed robbery. The credibility determinations of the trier of fact will not be disturbed on appeal. The evidence was therefore sufficient to support the defendant's conviction of two counts of armed robbery. This assignment of error is without merit.

CONCLUSION
For the reasons just discussed, we affirm the defendant's conviction and sentence.
AFFIRMED.