813 So.2d 1123 (2002)
STATE of Louisiana, Appellee,
v.
Edward D. JORDAN, Appellant.
No. 35,643-KA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 2002.
*1127 Amy C. Ellender, for Appellant.
Edward D. Jordan, Pro Se.
Richard P. Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Laura O. Wingate, Assistant District Attorneys, for Appellee.
Before WILLIAMS, CARAWAY and DREW, JJ.
WILLIAMS, Judge.
The defendant, Edward Jordan, was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. After a trial by jury, the defendant was found guilty as charged. The defendant's motions for new trial and for post-verdict judgment of acquittal were denied. After conviction, the state filed an habitual offender bill of information, and the defendant was adjudicated a second felony offender. The trial court sentenced defendant to serve 58 years at hard labor without the benefit of parole, probation, or suspension of sentence and denied his motion to reconsider sentence. The defendant appeals his conviction and sentence. For the following reasons, we affirm.

FACTS
Shortly after midnight on October 8, 1999, the victim, attorney Joseph Greenwald, drove his black Mercedes into the parking lot of the Best Western Hotel at the corner of Spring and Lake Streets in Shreveport. As he was driving into the parking lot he observed two black males standing on the north side of Lake Street. After parking and locking his car, the victim walked toward the entrance to the hotel, but was stopped approximately five yards from the door by the same two men he had seen earlier.
One of the assailants, who was wearing a blue and white hockey shirt, pointed a .38 caliber pistol in the victim's face, and ordered him to go back to his vehicle. At that point, Greenwald was face-to-face with the armed assailant, who demanded the victim's car keys, billfold and money. The victim gave the gunman approximately three to four hundred dollars from his pocket. Once at the car, an argument ensued when the robber demanded the billfold and the victim stated that it was locked inside the vehicle. The defendant then threatened to shoot the victim. While the assailants were having difficulty unlocking the vehicle, the victim took the opportunity to escape by running into the hotel lobby. A few moments later, he witnessed his black Mercedes being driven away from the scene.
The police were called and the victim stated that he had viewed the robbers for three to four minutes during the crime. The victim described the offender with the handgun as a black male in his mid-twenties, tall and wiry, approximately 170 lbs., wearing a blue and white hockey jersey. The second offender was described as a black male, a little shorter at 5'10" to 5'11" tall, approximately 150 to 160 lbs. and wearing a white pull over.
While at the scene, police officers also interviewed two witnesses who stated that they saw the two black males with the victim, but that neither saw a gun. The witnesses described one offender as a black male in his mid-twenties, tall and wiry, approximately 6' 0, brown skin, 150 to 160 lbs., short hair, and wearing a blue and gold jogging suit. The second offender was described as a black male in his mid-twenties, approximately 5'11", brown skin, 150 lbs. and short hair.
During an interview later on the day of the incident, the victim described the offender with the gun as a black male in his *1128 late teens to early twenties, approximately 5'11", 145-160 lbs., short hair, dark complexion with no facial hair, and wearing a blue and white ice hockey jersey. The second offender was described as a black male, 5' 9", 140-145 lbs., dark complexion, short hair and wearing a white shirt.
Officer Masser Tiberghien of the Royce City, Texas Police Department testified at trial that at 6 a.m. on October 8, 1999, he was dispatched to a Texaco station where three black males had been seen running away from a black Mercedes vehicle. The officer's investigation revealed that the Mercedes belonged to the victim and had been reported stolen. After a search of the surrounding area, the police apprehended three suspects, Ronnie Pea, Alex Roberts and the defendant, who at the time gave police the false name of Eric Davis. However, his true identity was later discovered.
The suspects were returned to Caddo Parish and were questioned by Shreveport police officers. Alex Roberts told police that he was with the defendant at the hotel in Shreveport. Roberts stated that defendant pointed a pistol at the victim and demanded his car keys and money. Defendant denied any involvement with the crime. Following a preliminary examination, defendant was charged with armed robbery. After a trial, the jury found defendant guilty as charged. The defendant was adjudicated a second felony offender and sentenced to serve 58 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The trial court denied his motions for post-verdict judgment of acquittal and to reconsider sentence. The defendant appeals his conviction and sentence.

DISCUSSION

Sufficiency of the Evidence
The defendant contends the trial court erred in denying his motion for post-verdict judgment of acquittal. He argues that the state failed to produce sufficient evidence to support his conviction for armed robbery.
The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to *1129 a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; When the defendant claims that he is not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687; State v. Powell, 27,959 (La. App.2d Cir.04/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.02/21/97), 688 So.2d 520.
To convict a defendant of armed robbery the state is required to prove the taking of anything of value belonging to another from the person or the area in the immediate control of another, by the use of force or intimidation while armed with a dangerous weapon. LSA-R.S. 14:64; State v. Guy, 97-1387 (La.App. 4th Cir.5/19/99), 737 So.2d 231, writ denied, 99-1982 (La.1/7/00), 752 So.2d 175.
In the present case, the victim testified that he was able to identify the defendant as the individual who had robbed him at gunpoint. The record shows that the descriptions of the assailant given by the victim before trial were generally consistent. Immediately after the crime, the victim stated that the gunman was tall, weighed approximately 170 pounds and wore a blue and white jersey. Later that day, the victim estimated that the armed offender was 5' 11" tall, weighed approximately 160 pounds with a dark complexion and wore a blue and white shirt. At trial, the victim testified that the gunman was six feet tall and weighed 170 to 175 pounds. The record indicates that the defendant is actually 6' 2" tall and weighs approximately 185 pounds.
Contrary to the defendant's assertions in his brief, the variations in the victim's descriptions of the gunman's height and weight were slight and the defendant's physical stature is substantially similar to that described by the victim. In evaluating the victim's testimony, the jury was able to weigh any differences in the victim's descriptions of his assailants. The defendant also points out that the victim and other witnesses described the gunman as having a dark complexion or brown skin, which he contends does not match his "light" skin tone. However, at trial the victim reiterated his perception of defendant's complexion as dark. The jury was able to observe the defendant's skin tone in assessing the reasonableness of the victim's description.
The record includes additional testimony which supports the jury's guilty verdict. Alex Roberts testified that he and the defendant were the individuals who robbed the victim outside of the hotel on October 8, 1999 and further stated that defendant was the person who wielded the gun. Officer Tiberghien identified the defendant as one of the individuals who was apprehended fleeing from the location of the stolen vehicle in Royce City, Texas. In addition, defendant testified and admitted that he had driven the stolen vehicle to Texas and had given police a false name when questioned.
The jury heard the evidence and weighed the credibility of the witnesses. Based upon this record, the jury could reasonably have found that the state negated any reasonable probability of misidentification. Viewing the evidence in a light most favorable to the prosecution, we conclude that rational jurors could have found that each of the essential elements of the crime of armed robbery were proven beyond a reasonable doubt. There was sufficient evidence to support the jury's finding that the defendant was the individual who took the victim's property by the use of force or intimidation while armed with a handgun and was thus guilty of *1130 armed robbery. The assignment of error lacks merit.

Motion in Limine
The defendant contends the trial court erred in denying the motion in limine to exclude the in-court identification of defendant by the victim. Specifically, defendant argues the in-court identification was unreliable because the victim did not identify defendant before trial.
The absence of a pretrial identification goes to the weight of the witness's testimony, not to its admissibility. State v. Boettcher, 338 So.2d 1356 (La.1976). Several factors are considered in evaluating the reliability of an identification: (1) the opportunity of the witness to view the criminal at the scene of the crime; (2) the witness's degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
In order to suppress an identification, the defendant must show that the procedure was suggestive and that there was a substantial likelihood of misidentification by the eyewitness. State v. Cotton, 511 So.2d 1207 (La.App. 2d Cir.1987). Even if the identification procedure is suggestive, an identification will be permissible if there is not a very substantial likelihood of irreparable misidentification. Manson v. Brathwaite, supra; State v. Williams, 33,201 (La.App.2d Cir.5/15/00), 758 So.2d 1003, writ denied, XXXX-XXXX (La.4/27/01), 791 So.2d 111. The opportunity to crossexamine a witness about his in-court identification of the defendant as the perpetrator of a crime will ordinarily cure any suggestiveness of such an identification. State v. Wafer, 31,078 (La.App.2d Cir.9/23/98), 719 So.2d 156.
In the instant case, there was no pretrial identification. The defendant was never included in a photographic lineup because when arrested he gave a false name. No information was found regarding the alias given and so a photographic lineup was not prepared.
Applying the Manson factors in this case demonstrates that the victim had the opportunity to view the defendant during the crime when they stood close together and exchanged words while facing each other for three to four minutes. The opportunity was sufficient for the victim to remember and later describe the defendant, his clothing and his actions. The victim's degree of attention during the event was great, as illustrated by the fact that a gun was pointed in his face and he was later able to provide a detailed account of the crime and an accurate description of the defendant. The victim demonstrated a high level of certainty at the confrontation at trial. He testified that he was "positive" he could recognize the gunman and identified the defendant as the individual who robbed him at gunpoint. Finally, the time between the crime and the in-court confrontation was approximately 14 months, which is not an extraordinarily long lapse of time.
Although the opportunity to view the defendant on the evening of the crime was arguably minimal and the victim's descriptions of the defendant varied slightly, his high level of certainty and degree of attention balance these factors. Application of the foregoing factors establishes that the in-court identification of defendant was permissible because there did not exist a substantial likelihood of irreparable misidentification. In any event, the record reflects that the defense was able to cross-examine the victim concerning his ability to view the assailant at the time of the *1131 crime and to make the jury aware of the various factors bearing upon the reliability of his in-court identification of the defendant as the perpetrator of the crime. This opportunity for cross examination cured any potential suggestiveness.
A review of the testimony shows that the defendant did not meet his burden of proving that the in-court identification was suggestive, and that there was a substantial likelihood of misidentification. Therefore, the trial court did not err in denying the defendant's motion in limine to exclude the in-court identification. This assignment of error is without merit.

Evidentiary Issues
The defendant contends the trial court erred in allowing the jury to hear repetitive testimony from the victim and Officer Tiberghien about the lighting at the crime scene. Defendant argues that he was unfairly prejudiced by the unreliable, nonexpert testimony of Tiberghien regarding conditions at the hotel parking lot as they existed one year after the crime occurred.
LSA-C.E. art. 402 provides:
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible.
Relevant evidence is defined in LSA-C.E. art. 401 as:
evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
In determining the relevancy of evidence, the trial judge is given wide discretion, and such determinations will not be disturbed on appeal absent a clear abuse of that discretion. Tramontin v. Glass, 95-744 (La.App. 5th Cir.1/30/96), 668 So.2d 1252. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.06/26/98), 719 So.2d 1048.
Officer Tiberghien testified with regard to the findings of his investigation and the occurrences which took place on October 8, 1999. When describing the lighting at the hotel, which was the scene of the crime, Officer Tiberghien was not testifying as an expert, but merely stated that the night before trial, he went out to the parking lot at the Best Western Hotel to inspect the lighting. The officer testified that the lighting was good, and that a person would be able to clearly see another individual's face after dark with the lighting provided.
The defendant did not object to the relevancy of Tiberghien's testimony about his observations of the lighting conditions at the hotel. The victim testified that he was able to clearly see the gunman as they stood face-to-face with the light provided in the hotel parking lot. The victim's testimony, which was apparently believed by the jury, was sufficient to support the requisite factual conclusion. Thus, there is no showing that the defendant was unfairly prejudiced by Tiberghien's testimony.
The defendant alleges that Officer Tiberghien gave false testimony regarding the seizure of cash and that the state used "planted" evidence to prove his guilt. In his brief, defendant contends that Tiberghien gave contradictory testimony about his recovery of the cash which was submitted into evidence. The record shows that the officer did not specifically recall the *1132 circumstances of how the money was seized until after he reviewed his report. Thereafter, Tiberghien stated that he recovered $35 from defendant's person and defense counsel verified this on cross-examination. The record is devoid of evidence that the money was "planted." To the contrary, at trial, the defendant admitted that he was carrying the cash in his pocket. The assignments of error lack merit.
The defendant contends the trial court erred by reading the bill of information to the jury. Defendant argues that the court indicated that the defendant committed the offense of armed robbery by failing to inform the jury that the bill of information was merely being read and that the court was not concluding that defendant was guilty.
LSA-C.Cr.P. art. 464 provides that the indictment shall be a concise and definite statement of the essential facts constituting the offense charged and shall state for each count the official or customary citation to the statute which the defendant is alleged to have violated. Here, the bill of information was proper in form and content. The statement read by the clerk was clear, concise, included the facts constituting the offense charged and stated the citation of the statute alleged to have been violated.
There is no showing that the reading of the bill of information misled the jury or prejudiced defendant. The bill stated only that the "accused stands charged" and that the state "charges" defendant with violation of the law. Further, the clerk informed the jury that defendant "pleads not guilty" to the charge. Thus, in reading the bill of information, the trial court did not inform the jury that defendant was guilty. The assigned error is without merit.

Speedy Trial
The defendant contends the trial court erred in denying his constitutional right to a speedy trial. Defendant argues that he was prejudiced by the delay because as a result, the victim became more inclined to identify defendant as the perpetrator of the robbery to get past the trial.
The right to a speedy trial is fundamental and is guaranteed to the accused. La. Const. art. I; U.S. Const. Sixth and Fourteenth Amendments; LSA-C.Cr.P. art. 701; Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The right attaches when an individual becomes an accused, either by formal indictment or bill of information, or arrest and actual restraint. State v. Bodley, 394 So.2d 584 (La.1981). The conduct of the prosecution and defendant are weighed in light of the following four factors: 1) length of delay; 2) reason for the delay; 3) the defendant's assertion of the right; and 4) prejudice to the defendant, such as the possible impairment of the presentation of his defense. Barker v. Wingo supra; State v. Johnston, 480 So.2d 823 (La.App. 2d Cir.1985).
The length of time that has elapsed since defendant's arrest must be reviewed to determine whether his constitutional rights were violated. The defendant was arrested on October 13, 1999, and the trial commenced on December 6, 2000. During that time period, the defendant filed a motion for discovery and a bill of particulars and a preliminary examination was conducted. Defendant has not shown that any delay impaired the preparation of his defense or caused the victim to be more inclined to identify defendant as the perpetrator of the crime. As previously noted, the victim identified defendant based upon his face-to-face contact, which allowed the victim to get a clear view of *1133 defendant. After reviewing the record, we cannot say the 14 month delay from arrest until trial was unreasonable.
LSA-C.Cr.P. art. 701(D)(1)(a) provides that after a defendant files a motion for speedy trial, with an affidavit by his counsel certifying their readiness to proceed, the trial of a defendant charged with a felony shall be commenced within 120 days if in custody. Defendant filed a motion for speedy trial on July 28, 2000. Thus, the trial commenced less than ten days after the expiration of the 120 day period. Violation of Article 701(D)(1) does not bar prosecution, but merely authorizes pretrial release. Johnston, supra. Consequently, the issue is moot. The assignment of error lacks merit.

Ineffective Assistance of Counsel
The defendant contends that his trial attorney was ineffective, depriving him of his right to counsel. Defendant argues that his counsel's deficient performance prejudiced his defense such that the trial outcome would have been different but for the attorney's errors.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for postconviction relief than on appeal, since that procedure allows the opportunity for a full evidentiary hearing under LSA-C.Cr.P. art. 930. State v. Green, 27,652 (La. App.2d Cir.1/24/96), 666 So.2d 1302. However, when the record is sufficient, this court may resolve the issue on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Grissom, 624 So.2d 476 (La.App. 2d Cir.1993).
To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991). The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Moore, supra.
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, in which the result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, *1134 supra; State v. Grissom, supra. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; Knighton v. Maggio, 740 F.2d 1344 (5th Cir.1984); State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir.), writ denied, 505 So.2d 1139 (La.1987).
After reviewing the record, we conclude that the defendant has failed to meet his burden of proving that his trial counsel's representation fell below the standards of reasonableness and competency required for attorneys in criminal cases. Further, the defendant has failed to show that counsel's performance prejudiced his defense. The Strickland standard requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial. The defendant failed to establish a reasonable probability that but for his counsel's alleged errors, the outcome of the trial would have been different. Thus, the assignment of error lacks merit.

Excessive Sentence
The defendant contends the trial court erred in imposing an excessive sentence. He argues that the court failed to adequately articulate a justification for the sentence as required by LSA-C.Cr.P. art. 894.1 and that the sentence is unconstitutionally excessive.
A motion for reconsideration of sentence must contain a specific ground or grounds upon which the defendant is seeking to have the sentence reconsidered. LSA-C.Cr.P. art. 881.1(D); State v. Barnes, 607 So.2d 872 (La.App. 2d Cir. 1992). Since defendant's motion for reconsideration merely alleged that the sentence is excessive, he is "relegated to having the appellate court consider the bare claim of excessiveness." State v. Mims, 619 So.2d 1059 (La.1993). This bare claim preserves only the issue of constitutional excessiveness. Mims, supra; State v. McEachern, 624 So.2d 43 (La.App. 2d Cir.1993).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864. Additionally, the trial court has wide discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of that discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
Prior to imposing sentence, the trial court reviewed the pre-sentence investigation (PSI) report, which showed that defendant was on active supervised probation for a conviction of unauthorized use of a moveable at the time he committed the present offense. The PSI addressed defendant's social and medical history, his educational background and family situation. The trial court noted that defendant was a second felony offender.
For a conviction of armed robbery under LSA-R.S. 14:64(B), the sentencing range is imprisonment at hard labor for not less than ten years nor more than 99 years, *1135 without benefit of parole, probation or suspension of sentence. Pursuant to LSA-R.S. 15:529.1(A)(1)(a), the sentence for a second felony conviction shall be a term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. Thus, the 58 year sentence imposed is at the low end of the sentencing range for this second felony offender.
We are not persuaded by the defendant's argument that the lack of physical harm to the victim calls for a lesser sentence. The evidence demonstrates that the defendant threatened the victim by brandishing a firearm and placed the victim in fear for his life until he was able to escape.
After reviewing the record, we conclude that the sentence imposed is neither grossly disproportionate to the severity of the offense nor shocking to the sense of justice. There is no showing that the trial court abused its wide discretion in sentencing this defendant. Consequently, we cannot say that the sentence is constitutionally excessive. The assignment of error lacks merit.
We have examined the record for error patent and found none.
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.