LOLLEY, J.
 

 11 This criminal appeal arises from the Sixth Judicial District Court, Parish of Tensas, State of Louisiana. The defendant, Early D. Clark, was convicted of aggravated second degree battery, a violation of La. R.S. 14:34.7, and armed robbery, a violation of La. R.S. 14:64. Clark was sentenced to 10 years at hard labor for the aggravated second degree battery, that conviction to be served concurrently with 55 years at hard labor without benefit of probation, parole, or suspension of sentence for the armed robbery conviction. Clark filed a timely motion to reconsider sentence which the trial court denied. Defendant now appeals. For the following reasons, we affirm the convictions and sentences.
 

 FACTS
 

 On November 27, 2005, 83-year-old Lillie Mae Strawder was in her home in Waterproof, Louisiana, watching the evening weather report on her local news channel. Strawder went to her front door to look outside since the news warned of inclement weather. When she opened the door, Clark was standing in her doorway. He said “Hello” to Strawder and then hit her in the head with a concrete rock. Strawder asked Clark what he wanted. He stated that he was going to kill her if she did not give him any money. Straw-der said that she did not have any money. Clark, cornering her into the bathroom, kept demanding money and threatening to kill her. At one point, Clark stated to an unknown assailant
 
 [1]
 
 , “Boy, bring that pistol in here.” Eventually, Strawder told Clark that she had money in her white and black purses in the bedroom. After a while, once Strawder believed Clark |2had left, she came out of the bathroom and called her daughter, Patricia Wiley, and the police around 6:15 p.m. James Howell, the assistant police chief of the Waterfront Police Department, arrived at Strawder’s house. Strawder informed Officer Howell that Clark had attacked her and that he was wearing a white shirt and khaki pants. Officer Howell found a bloody concrete rock inside Strawder’s home near the front door. Strawder was sent to the hospital around 9:00 p.m., where she received several stitches and was sent home that same night.
 

 The next day, Strawder identified Clark at a photo lineup. Clark was subsequently arrested and charged by bill of information with aggravated second degree battery and armed robbery. After a jury trial, Clark was found guilty as charged. The trial court sentenced Clark to serve 55 years at hard labor without benefit of probation, parole, or suspension of sentence for the armed robbery conviction coneur-
 
 *1259
 
 rent with the 10 years at hard labor for the aggravated second degree battery conviction and credit for any time served prior to his sentence. This appeal ensued.
 

 LAW AND DISCUSSION
 

 Identification
 

 In his first assignment of error, Clark argues that Strawder misidentified him as the perpetrator. Specifically he argues that: (1) Strawder named him as the perpetrator only after his name was suggested to her by others; (2) she was blinded by the blow to her head and probably did not get a good look at her assailant; (3) Clark was not wearing khaki pants Land a white shirt on the night of the incident as stated by Strawder, and (4) he had alibi witnesses.
 

 In seeking to suppress an identification, the defendant must prove the procedure used was suggestive and that the totality of the circumstances presented a substantial likelihood of misidentification.
 
 State v. Martin,
 
 595 So.2d 592 (La.1992);
 
 State v. West,
 
 561 So.2d 808 (La.App. 2d Cir.1990),
 
 writ denied,
 
 566 So.2d 983 (1990). The U.S. Supreme Court has approved several factors for evaluating whether the reliability of an identification may outweigh the suggestiveness of the procedures employed.
 
 See Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977);
 
 State v. Davis,
 
 27,961 (La.App. 2d Cir.04/08/96), 672 So.2d 428,
 
 writ denied,
 
 1997-0383 (La.10/31/97), 703 So.2d 12. The factors are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness’s degree of attention, (3) the accuracy of the victim’s prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Further, evidence of the witness’s pretrial identification of the defendant enhances the credibility of that witness’s in-court identification.
 
 State v. Tilmon,
 
 38,003 (La.App. 2d Cir.04/14/04), 870 So.2d 607,
 
 writ denied,
 
 2004-2011 (La.12/17/04), 888 So.2d 866.
 

 Cases involving a defendant’s claim that he was not the person who committed the crime require the state to negate any reasonable probability of misidentification in order to carry its burden of proof.
 
 State v. Hughes,
 
 2005-0992 (La.11/29/06), 943 So.2d 1047;
 
 State v. Powell,
 
 27,959 (La.App. 2d Cir.04/12/96), 677 So.2d 1008,
 
 writ denied,
 
 1996-1807 (La.02/21/97), 688 So.2d 520.
 

 Furthermore, the appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App. 2d Cir.02/25/09), 3 So.3d 685;
 
 State v. Hill,
 
 42,025 (La.App. 2d Cir.05/09/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Speed,
 
 43,786 (La.App. 2d Cir.01/14/09), 2 So.3d 582;
 
 State v. Allen,
 
 36,180 (La.App. 2d Cir.09/18/02), 828 So.2d 622,
 
 writs denied,
 
 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255,
 
 cert. denied,
 
 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
 

 Defendant’s Name
 

 Here, the record reflects that while Strawder did not know the defendant by name, she was able to identify Clark as the
 
 *1260
 
 perpetrator independently of any outside influence. Further, Strawder testified at trial that since she was wearing her eyeglasses right before Clark struck her with the concrete rock, she was able to identify the defendant immediately. She stated that she knew he was the person who mowed her yard and that he was |sthe son of Margaret Jean Clark, who is also called “Jeannie.” Strawder was also able to identify Clark as the perpetrator the day after the incident during a photo lineup with absolute certainty and without any assistance.
 

 Other witnesses supported Strawder’s definitive identification of the defendant. Wiley testified that she was the first person to arrive at her mother’s house after the incident. She stated that her mother told her that the person who injured her was “Jeannie’s boy,” the “one that mows my yard.” Wiley explained to Strawder that “Jeannie” had two sons and asked her mother which son she was referring to. Strawder repeated that it was the son who mowed her yard. Wiley asked her mother if she meant Early Clark, the defendant, since he was the only one of Jeannie’s sons who mowed Strawder’s yard. Strawder agreed that he was her attacker.
 

 Frances Bailey, Strawder’s neighbor, testified that she arrived at the victim’s house soon after the incident. She too testified that Strawder told her several times that “Jeannie’s boy, the one that mows [her] yard” was the perpetrator. Bailey also verified that Early Clark was the only one of Margaret Jean Clark’s sons to cut Strawder’s yard.
 

 The record indicates that although Strawder did not know the defendant by name, she clearly recognized him. There was no evidence of any suggestive actions on the part of police officers or any other person. As such, Strawder’s identification is reliable.
 

 |
 
 ¡¡Eye Injury
 

 Mitchell Scott Sandidge, an emergency room nurse who treated Strawder after the incident, testified that Strawder suffered no injuries to her eyes that affected her vision after the incident. We therefore find this argument to be without merit. Furthermore, as stated above, Straw-der testified at trial she was wearing her eyeglasses right before Clark struck her with the concrete rock, and she was able to identify Clark immediately.
 

 Defendant’s Clothing
 

 Strawder testified that the perpetrator was wearing a white shirt and brown khaki pants. She later said the pants were light blue. Demarcus Hilliard and Sheldon Bot-ley testified that they saw Clark near Strawder’s home at the time of the incident, and that Clark was wearing khaki pants and a white “muscle” shirt.
 

 In contrast, virtually all of the defendant’s witnesses stated that they saw Clark wearing a striped shirt and jean shorts. Officer James Howell testified that when he arrested Clark the day after the incident, Clark was wearing a striped shirt and jean shorts. Notably, Jeannetta Gill, one of Clark’s witnesses, testified that although she saw Clark wearing a striped shirt, she did notice that he was wearing a white “muscle” shirt underneath.
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Given the testimony, the evidence was sufficient for a reasonable juror to conclude that Clark either changed clothes or covered up 17his white shirt with the striped shirt seen by his witnesses
 
 after
 
 the incident.
 

 
 *1261
 

 Defendant’s Alibi Witnesses
 

 Strawder testified that she was watching the weather report on a local news station immediately before the incident. Mark Guy, a deputy with the Tensas Parish Sheriffs Department, testified that he contacted the local news station and they informed him that the weather report viewed by Strawder aired between 5:46 p.m. and 5:50 p.m. Accordingly, the incident occurred soon after. The dispatch log at the sheriffs office showed that a call was made for police assistance to Straw-der’s home at 6:15 p.m. Therefore, the incident occurred on Sunday, November 27, 2005, between 5:46 p.m. and 6:15 p.m.
 

 Patricia Gill was called by the defendant as an alibi witness at trial. She testified that she saw Clark the day of the incident as she was leaving jail, but she could testify only that she saw him after 4:15 p.m. Eddie Lee Clark, the defendant’s aunt, testified that she saw Clark drive past her at 6:00 p.m. She later conceded that she was uncertain of the time but that she saw Clark between 6:00 p.m. and 7:00 p.m.
 

 Jeannetta Gill, a friend of Clark’s, testified that Clark dropped his niece off at her house at 4:45 p.m. the day of the incident. She said that she saw Clark parked at someone’s house later that night. Gill said that she was certain of the time because her mother had gone to work between 5:30 p.m. and 6:00 p.m. and that she had seen Clark soon after. However, Lula Mae Lee, Jeannetta Gill’s mother, testified that she did not go to work on the day of the incident because she did not work on Sundays. Sheila Promise, | ^Clark’s cousin, testified that she saw Clark driving on the night of the incident; however, she could not recall a specific time.
 

 Mary Clark, Clark’s sister, testified that she saw Clark on the day of the incident at 6:00 p.m. She said that she was certain of the time because she saw the time on a clock in her living room. But, when asked to describe the clock in her living room, she could not describe the clock. Jessica Holmes testified that she saw Clark on the day of the incident when he dropped his sister Mary off at Holmes’ home to get her hair fixed. Holmes could not remember the time she saw Clark, except that it had just turned dark.
 

 The record also reveals that several neighbors testified that they saw Clark near Strawder’s home before and soon after the incident. Demarcus Hilliard testified that he saw Clark walking up a nearby road right before the incident. He said Clark had something in his pocket. Hilli-ard also testified that 30 minutes before the police and ambulance arrived at Straw-der’s home, he saw Clark leave from the back of Strawder’s home. Sheldon Botley, a 15-year-old neighbor of Strawder, who also knew Clark, testified that he saw Clark enter the vacant house next to Hilli-ard’s home. Botley said that when Clark went into the vacant house, he was carrying something. Botley then saw Clark leave the vacant house and walk down a nearby street out of the neighborhood. Botley told his grandfather, Woodrow Wiley, what he saw. Wiley testified that they later found Strawder’s purses hidden inside the vacant house and turned them over to the police.
 

 | flAfter a thorough review of the testimony at trial, the record does not substantiate any of Clark’s claims. First, none of Clark’s alibi witnesses could place Clark at another location at the exact time of the incident. Moreover, several other witnesses as detailed above, saw Clark near Strawder’s home before and after the incident. It is reasonable for a juror to make a credibility determination and reject Clark’s alibi argument and believe the other witnesses who saw Clark near Straw-der’s home. The record clearly negates
 
 *1262
 
 any reasonable probability of misidentification, and supports the finding that Straw-der was able to independently identify Early Clark as the perpetrator.
 

 Dotible Jeopardy
 

 In his second assignment of error, Clark argues that his right against double jeopardy was violated because the state relied on the same “use of force” element found in both armed robbery and aggravated second degree battery to prove the charges.
 

 The state argues that there were no double jeopardy issues, as Clark committed two separate and distinct acts in this case. The state asserts that the aggravated second degree battery was completed after Clark hit Strawder with the concrete rock and that the armed robbery was completed when Clark yelled for a gun to an unknown assailant and when he told Strawder that he would kill her if she did not give him any money. We agree.
 

 A person cannot twice be put in jeopardy for the same offense. U.S. Const. amend. V; La. Const, art. 1, § 15; La. C. Cr. P. art. 591;
 
 State v. Knowles,
 
 392 So.2d 651 (La.1980). Louisiana uses both the “Blockburger test” and the “same evidence test” in determining whether double jeopardy exists.
 
 State v. Ceasar,
 
 37,-770 (La.App. 2d Cir.10/09/03), 856 So.2d 236. In
 
 Blockburger v. United States,
 
 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court held that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. Louisiana also uses the broader “same evidence” test which dictates that:
 

 If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one.
 

 State v. Steele,
 
 387 So.2d 1175 (La.1980);
 
 State v. Robertson,
 
 511 So.2d 1237 (La.App. 2d Cir.1987),
 
 writ denied,
 
 516 So.2d 366 (La.1988). This test depends on the proof necessary for a conviction, not the evidence that is actually presented at trial.
 
 State v. Knowles, supra,
 
 on subsequent appeal, 395 So.2d 678 (La.1981).
 

 Elements of Offenses
 

 Elements of armed robbery are (1) a taking, (2) of anything of value, (3) from the person or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon. La. R.S. 14:64;
 
 State v. Carter,
 
 1998-24 (La.App. 5th Cir.05/27/98), 712 So.2d 701, 708,
 
 writ denied,
 
 1998-1767 (La.11/06/98), 727 So.2d 444.
 

 In order to prove aggravated second degree battery, the state must prove (1) the intentional use of force or violence on the person of another, |n(2) that this use of force was committed with a dangerous weapon, (3) and that the offender had the requisite intent to inflict serious bodily injury. La. R.S. 14:34.7. “Serious bodily injury” is defined, in pertinent part, as a bodily injury that involves extreme physical pain or a substantial risk of death. La. R.S. 14:34.7(B).
 

 In the case at hand, double jeopardy is not violated. Although both crimes have as an element the existence of a “use of force,” the facts of this case show that Clark exhibited two different instances of the “use of force” that created two separate and distinct acts stemming from the series of events. First, elements of the aggravated second degree battery were completed when Clark hit Strawder in the head with the concrete rock, causing her to
 
 *1263
 
 suffer extreme pain and her injuries to require several sutures.
 

 The act of the armed robbery occurred after Strawder was hit with the rock. The armed robbery was proven at trial by evidence showing (1) that Clark threatened to kill Strawder if she did not give him money, (2) that he was armed with a concrete rock and “asked” for a gun, (3) that he took Strawder’s purses containing at least $43.00. Strawder testified at trial that she feared that Clark would kill her and that she would never see her family again. Clearly, Clark’s threat to kill Strawder was sufficient to prove the use of “intimidation” element because it prompted Strawder to react with fear for her life.
 
 See State v. Long,
 
 36,167 (La.App. 2d Cir.10/30/02), 830 So.2d 552, 557. The offenses, therefore, required different evidence to sustain a conviction. Double jeopardy is not an issue in the instant case. This assignment is therefore without merit.
 

 11⅞Sentencing
 

 In his last assignment of error, Clark argues that the sentence is constitutionally excessive. He also contends that while the trial court took cognizance of the La. C. Cr. P. art. 894.1 factors, it reviewed Clark’s elementary school records, and inappropriately considered outside factors.
 

 The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Lathan,
 
 41,855 (La.App. 2d Cir.02/28/07), 953 So.2d 890,
 
 writ denied,
 
 2007-0805 (La.03/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982);
 
 State v. Swayzer,
 
 43,-350 (La.App. 2d Cir.08/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Ates,
 
 43,327 (La.App. 2d Cir.08/13/08), 989 So.2d 259,
 
 writ denied,
 
 2008-2341 (La.05/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Shumaker,
 
 41,547 (La.App. 2d Cir.12/13/06), 945 So.2d 277,
 
 writ denied,
 
 2007-0144 (La.09/28/07), 964 So.2d 351.
 

 Second, a sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.01/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La.01/15/02), 805 So.2d 166;
 
 State v. Robinson,
 
 40,983 (La.App. 2d Cir.01/24/07), 948 So.2d 379.
 

 Before imposing its sentence, the trial court considered statements made in Clark’s presentence investigation report and several sentencing factors under La. C. Cr. P. art. 894.1. Specifically, the court observed Clark’s (1) youthful age of 21, (2) history of suspension from school, (3) extensive juvenile and criminal record for
 
 *1264
 
 violent offenses, (4) addiction to marijuana, and (5) his lack of guilt and remorse for the instant offenses. The court also recognized that the assault on Strawder was premeditated, resulted in the injury of an elderly person, and involved Clark violating his position of trust with Strawder. The trial court gave extensive reasons for his sentence and we agree with his accurate observations.
 
 [2]
 
 Clark’s 114midrange sentence for the offense of armed robbery and his less-than-maximum sentence for the offense of aggravated second degree battery are not grossly out of proportion to the seriousness of the offense, considering the fact that Clark struck an 83-year-old woman that he knew across the head with a concrete rock, forced his way into her home, threatened her life, and all for $43.00. This assignment is without merit.
 

 Error Patent
 

 A review of the record shows that the minutes contain an error on the defendant’s sentence. The minutes state that Clark is to serve his sentence for aggravated second degree battery without benefit of probation, parole, or suspension of sentence. However, the trial court placed no such restriction on Clark’s sentence and such a restriction is not warranted under La. R.S. 14:34.7. Thus, the trial court is instructed to correct this error in the minutes, as the transcript controls over the minutes when there is a conflict.
 
 State v. Lynch,
 
 441 So.2d 732, 733 (La.1983).
 

 CONCLUSION
 

 For the foregoing reasons, we affirm Early Clark’s convictions and sentences.
 

 AFFIRMED.
 

 [1]
 

 . Although Clark seemingly asked someone to bring him a pistol when he was robbing Strawder, there was no evidence that another person was involved.
 

 [2]
 

 . Incidentally, we cannot help but note that Clark would have received more from Straw-der if he continued to mow her lawn than the $43.00 he stole from her for which he has received jail time.