33 So.3d 259 (2010)
STATE of Louisiana, Appellee,
v.
Ron Karry LASTER, Appellant.
No. 44,870, KA.
Court of Appeal of Louisiana, Second Circuit.
February 3, 2010.
Rehearing Denied March 5, 2010.
*262 Peggy Sullivan, Louisiana Appellate Project, for Appellant.
Charles R. Scott, II, District Attorney, Suzanne M. Owen, Sarah S. Midboe, Dhu Thompson, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS, and LOLLEY, JJ.
BROWN, Chief Judge.
In October 2003, a series of armed robberies took place in Shreveport, Louisiana. These crimes occurred at the Travelodge Motel on October 24, at the Lucky Liquor Store at about 10:00 p.m. on October 25 and at approximately 1:00 a.m. on October 26 at a private residence.[1] On October 26, defendant, Ron Karry Laster,[2] was arrested in Ardmore, Oklahoma, driving a vehicle stolen in the home invasion robbery. The trial court granted defendant's motion to represent himself with the assistance of standby counsel. Defendant was tried by a jury and found guilty on all three counts. The state withdrew a multiple offender bill of information and defendant was sentenced to 45, 65, and 55 years at hard labor. The sentences were ordered to be served concurrently without the benefit of probation, parole, or suspension of sentence. On appeal defendant is represented by the Appellate Project. Finding no error, we affirm.

Discussion

Self-Representation
The defense argues that the trial court did not adequately advise defendant concerning self-representation.
An accused has the right to choose self-representation. State v. Leger, 05-0011 (La.07/10/06), 936 So.2d 108, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007); State v. Bridgewater, 00-1529 (La.01/15/02), 823 So.2d 877, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 *263 L.Ed.2d 1089 (2003). Because of the disadvantages of proceeding without counsel, an accused must knowingly, intelligently, and unequivocally waive the right to counsel. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Yates, 44,391 (La.App.2d Cir.07/01/09), 15 So.3d 1260; State v. Moore, 40,311 (La. App.2d Cir.01/13/06), 920 So.2d 334, writ denied, 06-2267 (06/01/07), 957 So.2d 167.
The trial court, in accepting a waiver of counsel, should advise the accused of the nature of the charge and the penalty range, should inquire into the accused's age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver. State v. Simmons, 05-1462 (La.03/17/06), 924 So.2d 137; State v. Strain, 585 So.2d 540 (La.1991). There is no particular formula which must be followed by the trial court in determining whether the defendant waived his right to counsel. State v. Moore, supra.
In the instant case the record shows that the trial court inquired into defendant's educational history, his understanding of the penalties, his occupation, and his mental health history. Defendant, who was 42 years old, stated that he had gone to Indiana State University for two years, he recited the penalties for the crimes and stated that he had no mental health issues. The court also told defendant that if he proceeded through trial, he could not later switch back and forth between representing himself or requesting counsel. Further, the court informed defendant that he would have to accept the consequences of representing himself if he received an adverse verdict. Defendant stated that he understood what the trial court was advising. The trial court allowed defendant's motion but kept the Indigent Defender Board attorney as standby counsel.
Defendant filed several pretrial motions and received and frequently used the assistance of his standby counsel. The ability and conduct shown by defendant in pretrial matters and during the trial itself clearly demonstrated that defendant understood what he was doing and knowingly, intelligently, and unequivocally waived his right to counsel.

Sufficiency of Evidence
Defendant contends that the evidence adduced at trial was insufficient to convict him of three counts of armed robbery.
La. R.S. 14:64(A) provides:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
The standard of review applied to an insufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard is now written in La. C. Cr. P. art. 821. All evidence, both circumstantial and direct, must be sufficient under Jackson v. Virginia to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Rhodes, 29,207 (La. App.2d Cir.01/22/97), 688 So.2d 628, writ denied, 97-0753 (La.09/26/97), 701 So.2d 980.
The appellate court does not assess the credibility of witnesses or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony *264 of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
The evidence shows that in late October 2003, defendant, Andrea Riggin, Elijah Madkins and Kia Newsom left Topeka, Kansas, in defendant's Buick automobile bound for New Orleans, Louisiana. Defendant brought a number of guns with him. The group stopped in Bossier City, Louisiana, and stayed at the Days Inn. They met a man named Calvin, from whom they obtained crack cocaine. They went on to New Orleans and stayed for two or three days. The four from Kansas again stopped in the Shreveport area on their way back to Topeka. They stayed again at the Days Inn and got with Calvin to obtain more crack cocaine. Calvin was identified by the police as Calvin Easley who lives in Shreveport. Significantly, the group was in need of money to buy drugs and thus planned a robbery.

Count Three: Travelodge Motel
Although this was the third count, chronologically it was the first armed robbery. On October 24, 2003, the Shreveport Police were called to the Travelodge Motel located at 2134 Greenwood Road. Theresa Ahmad was the manager on duty and was working at the front desk of the motel. At approximately 3:00 p.m. a tall black male wearing a black shirt with stripes, black pants, and a black hat entered the motel with a gun. The man told Ms. Ahmad to get on the ground and then the man stepped over her and took cash from the drawer. A housekeeper, Wanda Sue Jones, was also in the motel and witnessed the robbery.
Andrea Riggin, who was described as defendant's girlfriend, testified that defendant and Calvin discussed committing a robbery in an area that Calvin had previously worked. She testified that they went to this location and she saw defendant walk from his vehicle toward the motel with a pistol in his pants. She stated that when he came from the motel he had the pistol and cash. She further testified that defendant bragged about robbing the motel. Riggin identified the driver of the vehicle as Calvin.
The testimony of Ms. Ahmad indicated that the robber was a tall, thin, black male. This description matches defendant. Both Ms. Ahmad and Ms. Jones testified that the man who took money from the drawer was armed with a pistol. Another witness who was out of state at trial told the investigating officer that the robber was a young man. The officer explained that the robber was wearing sunglasses and a hat and that this could make him look younger. The jury found these witnesses to be credible and concluded that defendant was guilty of armed robbery. Viewing these facts in a light most favorable to the prosecution, there was sufficient evidence to convict defendant of this crime.

Count One: Lucky Liquor Store
On October 25, 2006, at approximately 10:00 p.m. a Lucky Liquor store located on 1647 Kings Highway was robbed by two black males armed with a revolver and a shotgun. Bazemore Hill and Debbie Hausen were the employees working at the time. Both of the robbers wore sunglasses and both had caps covering their heads. One was described as short with darker skin while the other was taller with lighter skin. The cash register was locked so they unplugged it and took it with them. The manager, who was in the back, saw the robbery taking place from the security monitor and called 911. An LSU Medical Center police officer, Lisa Booth, was driving by as the robbers were leaving the liquor store. She made a U-turn and pulled in behind the suspects' Buick automobile, activated her cruiser's *265 lights, and chased the Buick for two blocks. The three occupants stopped the car, jumped out and ran. One of the suspects, Elijah Madkins, was later found hiding in an abandoned garage. The vehicle left behind by the robbers was registered to defendant, Ron Karry Laster.
Officer Booth observed three men fleeing the vehicle with weapons and a cash register. She positively identified Isaiah Madkins that evening and later identified defendant in court. As stated, Madkins and his girlfriend, Kia Newsom, had ridden with defendant and Andrea Riggin from Topeka, Kansas, to Shreveport. Later a resident who lived a couple of blocks from where the car was abandoned found a shotgun and a handgun in his yard. According to Andrea Riggin's testimony, these guns were identical to those brought by defendant from Kansas. Significantly, the robbery failed and defendant fled on foot. He had no money to buy cocaine and no transportation in which to flee the state. Riggin testified that when defendant returned that night to the Days Inn at 3:00 a.m. he was driving a stolen Cadillac and told her about the robberies. Defendant said that the third man in the liquor store robbery was Calvin. Considering the evidence in a light most favorable to the prosecution, there was sufficient evidence to convict defendant of the armed robbery of Lucky Liquor.

Count Two: Home invasion armed robbery
Shortly after the liquor store robbery and within a couple of blocks of where defendant's car was abandoned, a home invasion armed robbery was called in to 911 at 1:38 a.m. According to the victim, Misty Garrison, she awoke to find a tall, thin, light-skinned black male in her room. She stated that the robber put a wet leather glove to her mouth and a knife to her throat. In a struggle, the victim pulled off the perpetrator's mask. The robber tied Garrison to the bed, rummaged through her room for valuables, and then left in her car.
Later that same day, on October 26, 2003, defendant was pulled over in Ardmore, Oklahoma, for failure to wear a seatbelt. After questioning the occupants, the trooper discovered that none of them owned the vehicle. The officer found a purse in the vehicle and called Garrison's number which was listed on a checkbook in the purse. After discovering that the car was stolen, the officer arrested the occupants, who were defendant, Riggin and Newsom. (As stated, Madkins had been apprehended in the chase after the liquor store robbery).
Riggin testified that on the night of October 25, defendant, Madkins, and Calvin left together in defendant's Buick. Riggin testified that defendant returned alone wet and dirty around 3:00 a.m. driving the stolen Cadillac and told her about the liquor store and home invasion armed robberies.
Misty Garrison testified at trial that the perpetrator used a knife to rob her of money, jewelry, and her car. The knife came from her kitchen after the intruder had broken in from the back door. Garrison stated that the robber had wet gloves. Defendant was arrested in Oklahoma while driving Garrison's stolen vehicle. After the arrest, one of Garrison's credit cards was found in defendant's front pocket. Further, Riggin was wearing one of the victim's stolen rings. Moist gloves were discovered in defendant's possession in Oklahoma. Garrison positively identified defendant multiple times. When considering these facts in the light most favorable to the prosecution, the elements of this crime were established and there was sufficient evidence to convict defendant.

*266 Quashing the Subpoena Duces Tecum

Defendant next asserts that the trial court erred in quashing a subpoena duces tecum issued to Shreveport Detective Patrick McConnell to obtain records of his investigation of Michael House.
To be admissible, such evidence must be trustworthy, reliable and of probative value. State v. Gremillion, 542 So.2d 1074 (La.1989). In the instant case, defendant did not testify at trial. At the pretrial hearing, defendant claimed that he rented Misty Garrison's Cadillac from Michael House in a "rent-a-rock" situation. According to defendant, Det. McConnell had investigated House and could testify that House looked similar to defendant and that House had previously been convicted of armed robbery. Defendant also noted that House had been killed in an attempted armed robbery. Defendant incorrectly contends that the only way his "rent-a-rock" claim could be brought before the jury was if Det. McConnell had been subpoenaed. In fact, the only way this assertion or claim could have been presented was for defendant to testify. No one else, including Det. McConnell or Andrea Riggin, had any knowledge of the alleged "rent-a-rock" transaction. See State v. McBride, 00-0422 (La.App. 3d Cir.11/15/00), 773 So.2d 849, writ denied, 01-0294 (La.02/08/02), 807 So.2d 858. Defendant could have gotten on the stand and testified that he rented the car from House in exchange for cocaine and then presented evidence of House's appearance and history. Even so, this defense is spurious considering the time frame of events and the circumstances. Andrea Riggin did testify and this testimony, coupled with the time limitations involved, foreclosed any such claim by defendant concerning House. We also note that defendant's claim fails to explain why defendant abandoned his car and how defendant, who had no funds, got the cocaine to exchange for the car with House.
Det. McConnell's testimony would at best demonstrate a physical similarity and criminal history. Not only is this is not relevant, it creates the danger of confusion of the issues, misleading of the jury or an undue waste of time that substantially outweighs any probative value. Exclusion of such evidence does not violate defendant's right to present a defense. State v. Lathan, 41,855 (La.App.2d Cir.02/28/07), 953 So.2d 890, writ denied, 07-805 (La.03/28/08), 978 So.2d 297. Nothing was introduced to show that Det. McConnell would testify that House was the robber or at least that defendant was not. As in State v. McBride, supra, defendant could have testified about his alleged "rent-a-rock" transaction with House.
The right to present a defense does not require the trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. State v. Mosby, 595 So.2d 1135 (La.1992); State v. Lathan, supra; State v. Pugh, 02-171 (La.App. 5th Cir.10/16/02), 831 So.2d 341.

Identification
The defense argues that Misty Garrison's initial identification of defendant was unduly suggestive and therefore, her subsequent identifications should have been suppressed. The defense claims that the initial identification was suggestive because it was during the Oklahoma trial for the theft of Garrison's vehicle and defendant was clearly the person on trial for that offense. Also, defendant claims that the identification was problematic because the two are of different races.
*267 A defendant attempting to suppress an identification must first show that the identification procedure was suggestive, and that the totality of the circumstances presented a substantial likelihood of misidentification by the eyewitness. State v. Martin, 595 So.2d 592 (La.1992); State v. Clark, 44,594 (La.App.2d Cir.08/19/09), 16 So.3d 1256. Even if the identification procedure was suggestive, the identification will be admissible if, under the totality of the circumstances, it is found to be reliable. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.06/26/98), 719 So.2d 1048. The opportunity to cross-examine a witness about his or her in-court identification of the defendant as the perpetrator of a crime will ordinarily cure any suggestiveness of such an identification. State v. Jordan, 35,643 (La.App.2d Cir.04/03/02), 813 So.2d 1123, writ denied, 02-1570 (La.05/30/03), 845 So.2d 1067.
The U.S. Supreme Court has enunciated five factors for evaluating the reliability of an identification. These are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the victim's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
According to defendant, the 911 call was placed at 1:38 a.m. and therefore, if the victim awoke at 1:30 she would have only had eight minutes to observe the intruder. The victim stated that she looked at the clock and it read 1:30. However, she also stated that she kept watching the clock and the ordeal lasted around 45 minutes. Garrison stated that the robber was within one foot of her face at one point during the robbery. There was a struggle, she pulled off his mask and he then tied and bound Garrison. Assuming that the ordeal only lasted six minutes, it would still be enough time for her to observe the features of defendant.
Misty Garrison specifically stated that she memorized defendant's face so that she could identify him at a later time. According to Garrison, she was "freaked out" at first but later calmed down. Garrison gave a clothing description of defendant and stated that he was a tall, thin, light-skinned, black male. Defendant is a tall, thin, light-skinned, black male.
Garrison stated that she was 100 percent positive that defendant was the man who robbed her. Her level of certainty as to his identity has been consistent throughout these proceedings. The crime occurred on October 26, 2003. The identification occurred in court in Oklahoma on January 22, 2004. Less than three months elapsed between the crime and the identification. According to State v. Jordan, supra, a lapse of 14 months was not considered to be an extraordinarily long lapse of time.
The totality of the circumstances supports the reliability of the identification.

Motion to Quash
According to defendant's fourth assignment of error, the trial court erred in denying defendant's motion to quash the bill of information regarding the alleged home invasion robbery of Misty Garrison. Defendant argued at the original hearing on the motion to quash that he was entitled to receive any photographs and CSI reports concerning the crime scene at Ms. Garrison's home. The state responded that none of these items exist. Defendant now argues that the failure of the state to conduct this sort of an investigation prejudiced *268 his defense and the trial court should have granted the motion to quash on this basis.
First there was no denial of investigative access. The evidence of defendant's guilt is overwhelming. What evidence the state did have was given to defendant. There has been no prejudice to defendant because the police did not have photographs of the victim's residence.
La. C. Cr. P. arts. 532 and 534 govern the motion to quash.
Nothing in the abovementioned articles supports the granting of a motion to quash based on defendant's rationale. Further, there is no argument in this assignment of error specifying how the trial court's decision on this issue is incorrect.

Excessive Sentence
Defendant contends that his concurrent sentences of 45, 65, and 55 years are excessive.
A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.01/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La. App.2d Cir.01/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App.2d Cir. 04/02/97), 691 So.2d 864. It is well settled that the trial judge is given wide discretion in the imposition of sentences and the sentence imposed by her should not be set aside in the absence of abuse of that discretion. State v. Bell, 438 So.2d 636 (La.App. 2d Cir.1983); State v. Jones, 381 So.2d 416 (La.1980); State v. Sepulvado, 367 So.2d 762 (La.1979.)
The maximum penalty for armed robbery is 99 years imprisonment. Defendant was sentenced to serve 45 years on Count One, 65 years on Count Two, and 55 years on Count Three. The three sentences are to be served concurrently at hard labor without the benefit of probation, parole, or suspension of sentence. The trial judge stated that she considered the provisions of La. C. Cr. P. art. 894.1. In particular she noted that defendant has a history of committing robberies and at least one burglary which were all crimes of violence. Further, the court noted that the instant offenses included use of weapons and were of a violent nature.
These sentences were supported by the facts of the case and do not violate La. Const. art. 1 § 20.

Conclusion
For the foregoing reasons, defendant's convictions and sentences are affirmed.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, DREW, MOORE and LOLLEY, JJ.
Rehearing denied.
WILLIAMS and MOORE, JJ., would not consider rehearing.
NOTES
[1] The bill of information alleges that the residential robbery occurred on October 25 when it actually happened just past midnight. Initially the bill charged only the two counts committed on October 25. The third count at the motel was added by an amendment.
[2] While the bill of information spells defendant's middle name with an "a" (Kharry), in his filing with the court defendant spells his name with an "e" (Kerry).