# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-641


**STATE IN THE INTEREST OF**

**J. A.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC2015187
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Marc T. Amy, Judges.


**ADJUDICATION AFFIRMED. DISPOSITION AMENDED AND AFFIRMED AS AMENDED. REMANDED WITH INSTRUCTIONS.**

Cooks, J., dissents and assigns reasons.


James H. Looney
Louisiana Appellate Project
Post Office Box 3340
Covington, LA 70434-3340
(985) 892-1707
COUNSEL FOR DEFENDANT/APPELLANT:
    J. A.

**Annette Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, LA   70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **J. A.**

**Keith A. Stutes**
**District Attorney**
**Christine B. Roberts**
**Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, LA   70502-3306**
**(337) 232-5170**
**COUNSEL FOR  APPELLEE:**
      **State of Louisiana**

**AMY, Judge.**

In this delinquency proceeding, the State contended that the juvenile committed simple battery. After a trial, the trial court found that the State met its burden of proof and adjudicated the juvenile as delinquent. The trial court imposed a disposition of three months in the custody of the Office of Juvenile Justice, suspended; three months supervised probation; and special conditions. The juvenile appeals, asserting that the evidence was insufficient to support his adjudication. For the following reasons, we affirm the adjudication, amend the disposition and affirm as amended, and remand with instructions.

## Factual and Procedural Background

The State instituted delinquency proceedings against the juvenile, J.A.[1] The State contends that on October 3, 2014, J.A., who was born in 2003, struck a classmate, D.E., in the face. The State filed a petition charging J.A. with simple battery, a violation of La.R.S. 14:35, and seeking to adjudicate him as a delinquent. After a trial, the trial court found that the State met its burden of proof with regard to those charges, and adjudicated J.A. guilty of simple battery. The trial court imposed a disposition of three months in the custody of the Office of Juvenile Justice, suspended; three months supervised probation; and special conditions.

J.A. now appeals, asserting that the evidence was insufficient to support his adjudication.

---

[1] Pursuant to Uniform Rules—Courts of Appeal, Rule 5-2, the initials of the juvenile, the victim, and the minor witnesses are used to protect their identities.

**Discussion**

*Errors Patent*

An error patent is one "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La.Code Crim.P. art. 920(2). This court has previously determined that juvenile delinquency proceedings are entitled to an error patent review pursuant to La.Ch.Code art. 104 and La.Code Crim.P. art. 920. *See State in the Interest of J.C.G.*, 97-1044 (La.App. 3 Cir. 2/4/98), 706 So.2d 1081. After performing such a review, we note two errors which require action by this court.

Our review of the record reveals that the trial court failed to order credit for time served. A juvenile is entitled to credit for time spent in a secure detention facility prior to the imposition of disposition. La.Ch.Code art. 898(A). The record does not indicate whether J.A. spent any time in secure detention before disposition. However, we amend his disposition to reflect that he is given credit, if any is available to him, for time spent in secure detention prior to disposition as required by La.Ch.Code art. 898(A). We remand this matter to the trial court with instructions to note the amendment in the custody order and in the minute entry. *See State ex rel. A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012.

Further, our review indicates that the trial court failed to inform J.A. of the two-year prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Although the Children's Code does not contain a similar provision, this court has found that the notice should be given. *See, e.g., State in the Interest of C.C.*, 13-417 (La.App. 3 Cir. 10/9/13), 124 So.3d 56. Accordingly, we order the trial court to provide appropriate written notice to J.A.

within ten (10) days of the date of this opinion and to file proof of the notice in the record.

*Sufficiency of the Evidence*

J.A. also contends that the evidence was insufficient to support his adjudication. In a juvenile criminal proceeding,

> [T]he state's burden of proof is the same as in a criminal proceeding against an adult--to prove beyond a reasonable doubt every element of the offense alleged in the petition. La. Ch.Code art. 883; *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . .[T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984).

*State ex rel. D.P.B.*, 02-1742, pp. 4-5 (La. 5/20/03), 846 So.3d 753, 757 (first alteration ours). Additionally, in a juvenile criminal proceeding, the trial court's findings of fact are subject to the manifest error standard of review, and the appellate court should not disturb the trial court's reasonable evaluations of credibility and inferences of fact absent manifest error. *State in the Interest of C.P.*, 12-192 (La.App. 3 Cir. 6/6/12), 91 So.3d 1273. In the absence of internal contradiction or irreconcilable conflict with any physical evidence, a single witness' testimony is sufficient to support a factual conclusion if it is credited by the trial court. *State v. Davis*, 45,662 (La.App. 2 Cir. 11/3/10), 57 So.3d 1066, *writ denied*, 10-2677 (La. 4/25/11), 62 So.3d 85. Further, discrepancies in factual testimony which require a determination of the witnesses' credibility go to the weight of the evidence, not its sufficiency. *Id.*

3

J.A. was charged with simple battery. Simple battery is a battery, i.e., the intentional use of force or violence upon the person of another, which is committed without the consent of the victim. La.R.S. 14:33; La.R.S. 14:35.

At trial, Lafayette City Police Detective Todd Green testified that he interviewed J.A. about the incident and that J.A. admitted that he punched the victim, D.E., and knocked him to the ground. According to Detective Green, J.A. made a statement indicating that D.E. had been throwing pencils, pushing J.A., and otherwise "picking on" J.A. throughout the day. Detective Green testified that J.A. stated that he was "growing tired of that," and that he struck D.E. once after they walked into the PE room.

D.E. also testified. According to D.E.'s testimony, he attended elementary school with J.A., and J.A. was in his band and PE classes. D.E. testified that on the date of the incident, he and J.A. were in band together and J.A. was kicking him in the leg. J.A. stopped kicking for a few seconds after the band teacher told him to stop, but started again. According to D.E., when it was time to switch to PE, J.A. kicked him again. D.E. told J.A. to stop, but J.A. kicked him again. D.E. told J.A. to stop yet again. They sat down in their assigned places in PE and turned to talk to their friends. D.E. testified that when he turned back around, J.A. started punching him.

D.E. testified that J.A. punched him in the face and that he hit the ground. D.E. stated that when J.A. punched him he "blanked out." After J.A. punched him he couldn't see anything and he felt like it was a few minutes before he started breathing again. According to D.E., he "started catching a seizure" when he couldn't breathe. D.E. denied hitting, kicking, or picking on J.A. D.E. also denied

4

throwing pencils at J.A. D.E. testified that he and J.A. had an argument because J.A. kept kicking him.

L.C., a classmate of J.A. and D.E., also testified. L.C. was in band and PE with J.A. and D.E. L.C.'s testimony was inconsistent on whether the incident occurred in the band room or the PE room, but he did testify that D.E. and J.A. were playing around and that J.A. hit D.E. softly in the chest a few times and then once in the mouth, hard. L.C. stated that after J.A. hit D.E. in the mouth, D.E. fell to the ground crying and was having trouble breathing. According to L.C., D.E. didn't do anything to J.A. and D.E. never threw any punches or hit J.A. Further, L.C. testified that D.E. told J.A. to "shut up," but that no one was throwing pencils.

T.H. was also in band and PE with J.A. and D.E. According to T.H., J.A. was kicking D.E. in band, and D.E. said something like "c'mon man, stop" and tried to block J.A. from kicking him. T.H. stated that he pulled J.A. off D.E. because he kept kicking him. Later, when they were in PE, T.H. saw J.A. punch D.E. D.E. either "fell or passed out" after J.A. punched him. T.H.'s testimony was somewhat inconsistent as to where J.A. punched D.E.—T.H. testified that before J.A. punched D.E., he punched D.E. "softly" in the chest and in the chin. However, T.H. testified that J.A. punched D.E. in the chest before he "blacked out." T.H. could not remember whether anyone was throwing pencils in band and did not know if, other than J.A. kicking D.E. in band, there was any contact between J.A. and D.E. before they got to the gym.

J.A.'s grandmother and guardian testified about J.A.'s seizure disorder. According to her testimony, J.A. has developmental delays and disabilities, including a seizure disorder. J.A.'s grandmother testified that J.A. has had epileptic seizures since he was seven and takes medication for it. Further, she

testified that J.A. is in special education classes as a result of his seizure disorder. J.A.'s grandmother testified that when J.A. has a seizure, he falls to the floor, kicking, screaming, and his body spasms ("jerks"). The seizures last between a minute and a half and two minutes. Afterwards, J.A. has nosebleeds, unconsciousness, and tiredness. Further, she testified that J.A. cannot remember what happened and that he sometimes has outbursts in class.

J.A.'s grandmother testified that on the morning before the incident, the school nurse called her and told her that J.A. had a seizure earlier that day. However, J.A. did not want to go home because he had a test. After the incident, J.A. went to the doctor and J.A.'s seizure medication was increased. J.A.'s grandmother also testified that J.A.'s individual education plan was adjusted as a result of the incident, and that the school determined that the incident was related to his seizure disorder.

J.A. chose to testify. He testified that he remembered some of what happened on the day of the incident. According to J.A., he had a seizure earlier in the day and called his mom. J.A. asserted that he had a second seizure in band as a result of D.E. hitting him in the head. J.A. testified that he and D.E. were "hand playing" with each other in band. The teacher told them to stop, and D.E. "didn't chill out when I told him to chill out and stop hitting." J.A. testified that that is when D.E. hit him hard. J.A. stated, "[A]nd I hit him back. And when he had hit me, he had hit me in my head." J.A. testified that if he has a "bad seizure" he has spasms. However, he stated that he did not experience any spasms that day, just a headache and a nosebleed. J.A. testified that he had a nosebleed after D.E. hit him in the head.

6

J.A. testified more than once that he never went to the PE room. However, he also testified that he felt like he was going to have a seizure during band and PE. Further, although J.A. admitted hitting D.E. in his testimony, he later denied hitting D.E. and knocking him out.

Viewed in the light most favorable to the prosecution, there is sufficient evidence in the record to support an adjudication of simple battery. An adjudication for simple battery requires that the State prove that J.A. intentionally used force or violence upon D.E. without his consent. La.R.S. 14:33; La.R.S. 14:35. Striking someone is sufficient to constitute the use of force or violence upon another, especially, as in this case, when the blow has enough force to knock the victim to the ground. *State in the Interest of C.P.*, 91 So.3d 1273. Here, Detective Green testified that J.A. admitted hitting D.E., and that D.E., L.C., and T.H. all testified that J.A. hit D.E. It is within the trial court's purview to make findings of fact and determinations of credibility, and the trial court is in the best position to observe the witnesses. *Id.* Further, although there was inconsistent testimony among the witnesses with regard to some details, those discrepancies affect the weight of the evidence and not its sufficiency. *Davis*, 57 So.3d 1066.

J.A.'s argument on appeal is that the blow to D.E. was involuntary, as it was the result of a seizure, or that D.E. consented to his actions. As relevant here, criminal conduct consists of an "act . . . that produces criminal consequences, and which is combined with criminal intent[.]" La.R.S. 14:8(1). The comments to La.R.S. 14:8 note that:

> All positive conduct includes at some point a voluntary muscular movement (external manifestations of will) which we call an act. See Restatement of the Law of Torts (1934) § 2. To illustrate briefly, the muscular movement of pulling the trigger of a gun would be an "act." The bullet's hitting some object would be

7

"consequences." The act must be willed, so that if another person seized the hand of the accused and squeezed it and the trigger, or if the accused had a convulsion and lost control of his muscles, there would be no voluntary muscular movement on the part of the accused, and therefore no crime, even though someone was hit and died.

We additionally note that battery requires only general intent. *State v. Compton*, 11-68 (La.App. 3 Cir. 6/1/11), 66 So.3d 619, *writ denied*, 11-1362 (La. 12/2/11), 76 So.3d 1177.

Here, during disposition, the trial court stated that it did not credit J.A.'s assertion that the seizure disorder made him hit other children. When viewed in the light most favorable to the prosecution, we find sufficient evidence in the record to support the trial court's conclusion in this regard. There was no testimony that J.A. exhibited any of the symptoms of what he referred to as a "bad seizure," such as falling, kicking, or body spasms, which would indicate that his behavior towards D.E. was not a conscious or intentional act on his part. Further, the record indicates there was an ongoing series of escalating inappropriate behavior on the part of J.A. towards D.E. before the blow that knocked D.E. to the ground.

Neither does the record support a finding that D.E. consented to be punched. Consent is the "[a]greement, approval, or permission as to some act or purpose" and may be express or implied, i.e., inferred from conduct. *State in the Interest of C.J.*, 14-241, p.3 (La.App. 4 Cir. 7/23/14), 153 So.3d 467, 469 (quoting *Black's Law Dictionary* (8th ed. 2004)). The testimony of the victim alone is generally sufficient to establish the lack of consent to simple battery. *State in the Interest of C.P.*, 91 So.3d 1273. Our review of the record indicates that only J.A. testified that D.E. initiated the physical contact. D.E. testified that he did not hit J.A., and L.C. and T.H. both testified that they did not see D.E. hit J.A. Further, D.E. and T.H.

8

both testified that D.E. previously told J.A. to stop when J.A. was kicking D.E. As the finder of fact, it was the trial court's prerogative to credit this testimony and disregard J.A.'s testimony, and there is sufficient evidence in the record to infer that D.E. did not consent to the punch.

Viewed in the light most favorable to the prosecution, the evidence in the record is sufficient to support a conclusion that J.A. intentionally struck D.E. in the face, without D.E.'s consent. Accordingly, there is sufficient evidence in the record to support J.A.'s adjudication for simple battery.

## DECREE

For the foregoing reasons, we affirm the juvenile defendant, J.A.'s adjudication for the charge of simple battery, a violation of La.R.S. 14:35. We amend J.A.'s disposition to reflect that he is entitled to credit for time spent in secure detention prior to disposition, if any, and affirm as amended. We remand this matter with instructions for the trial court to note the amendment in the custody order and in the minute entry. Further, we order the trial court to inform J.A., in writing, of the provisions of La.Code Crim.P. art. 930.8 for post-conviction relief within ten days of the rendition of this opinion and to file proof of the notice in the record.

**ADJUDICATION AFFIRMED. DISPOSITION AMENDED AND AFFIRMED AS AMENDED. REMANDED WITH INSTRUCTIONS.**

15-641

**STATE IN THE INTEREST OF J. A.**

**COOKS, J., dissenting.**

I dissent from the majority's affirmance of the adjudication and disposition on the charge of simple battery against the eleven year-old child, J.A. I find the evidence introduced at the adjudication hearing was insufficient to prove all of the elements of the offense of simple battery beyond a reasonable doubt under the standard of review applicable to delinquency proceedings.

The record in this case clearly established J.A. had a seizure disorder. At trial, his grandmother, who has been J.A.'s guardian since birth, testified when J.A. has a seizure, he kicks, hits and acts out behaviorally. Following the seizure, he is exhausted and usually suffers a nose bleed. As a result of his seizure disorder, J.A. is in a special education class.

The record established J.A. suffered a seizure that morning and, according to J.A.'s grandmother, she was told by the school nurse he suffered a second one during the altercation with D.E. J.A. left class because he had a headache and then a nosebleed that morning--common effects after suffering a seizure. There also was no dispute that J.A. experienced a nosebleed that afternoon after the altercation. When asked why he hit D.E., J.A. denied doing anything and also denied even going to P.E. class, where the altercation occurred. It was testified that J.A. often cannot recall what happened when he has a seizure and has no control over what he does when he has a seizure.

I find the above clearly contradicts the majority's assertion that the record does not reflect any of the symptoms of a seizure. On this point, the majority

"cherry picks" its seizure symptoms, writing "[t]here was no testimony that J.A. exhibited any of the symptoms of what he referred to as a 'bad seizure,' such as falling, kicking, or body spasms." Initially, I note the majority ignores the fact J.A. suffered a nose bleed after the altercation, which was established to be a common symptom experienced by J.A. after a seizure. The supposed absence of the symptoms referenced by the majority is established only by the testimony of L.C. and T.H., classmates of J.A. I find it troubling to assume two eleven year old children were able to decipher whether J.A. exhibited symptoms of a seizure. Moreover, T.C. testified when he asked J.A. why he struck D.E., J.A. denied doing anything and he also denied going to P.E., where the striking of D.E. occurred. J.A. often does not remember what happens when he has a seizure. There was also inconsistency in the testimony of L.C. and T.H. T.H. testified the punch occurred during P.E. class, which was confirmed by D.E. L.C., however, stated the punch occurred in the band room. T.H. testified there were a few light pats to the chin followed by a punch to the chest. L.C. testified there were several light hits to the chest, and then a hard punch to the jaw.

Thus, there were several different, conflicting versions of the events leading up to the punch in question. However, there was no dispute that J.A. had earlier that day suffered a seizure and immediately following the altercation, experienced a nosebleed, which was a common after effect of a seizure. As noted, T.H. testified J.A. stated he did not remember doing anything to D.E. immediately after the altercation, consistent with the uncontradicted testimony that J.A. often cannot recall what happened when he has a seizure.

The majority opinion is also silent on the fact that the findings of the Lafayette Parish School Board Manifestation Determination Review committee concluded the infraction was caused by, or had a direct and substantial relationship to J.A.'s seizure disorder. Thus, I cannot agree that J.A. had the general intent

required to commit a battery and he did not intend the consequences which resulted from his involuntary actions.  Without intent, there can be no battery.

It is important to note that J.A. was in a special education class as a result of his inability to control his behavior and seizures due to a *physical disability.*  To adjudicate J.A. as a delinquent child for having committed simple battery, when there was ample evidence in the record that J.A. suffered from a physical disability that affected his ability to control his conduct is inappropriate.  Therefore, I dissent from the majority's affirmance of the adjudication and disposition of J.A. on the charge of simple battery.