JAMES F. MCKAY III, CHIEF JUDGE
This is a juvenile delinquency case. D.S. appeals the judgment of the Juvenile Court, adjudicating him delinquent of Simple Battery. Finding no error we affirm the adjudication and sentence.
STATEMENT OF THE CASE
On July 21, 2017, D.S. was petitioned in Juvenile Court with one count of simple battery in violation of La. R.S. 14:35, to wit: The intentional use of force or violence upon Demar Carter without consent. On August 1, 2017, D.S. was arraigned, whereby the court ordered the defense to file pleadings. On August 8, 2017, the defense filed an omnibus motion for discovery and bill of particulars. On September 27, 2017, the defense was granted a continuance of the adjudication hearing. On February 28, 2018, the day of the adjudication hearing, the defense filed two motions in limine , one to exclude in-court identification, and one to exclude the appellant's statement to law enforcement. The defense motions were denied. The appellant was adjudicated delinquent and sentenced to fifteen days in the custody of the Office of Juvenile Justice, with credit for time served.
FACTS
On March 12, 2016, at approximately 11:30 a.m., the victim, Demar Carter ("Carter"), was walking in the 2000 block of St. Bernard Avenue after leaving the Dollar General Store when he was struck from behind by the appellant, D.S. Just prior to the attack he had been walking with two friends, Tatiyana Williams ("Williams") and her unnamed female friend. At some point, after Carter left the Dollar General Store, D.S. attempted to engage Carter in conversation concerning *1212 an incident that had occurred the day before; the record is unclear as to what the incident was. Carter testified that D.S. hit him in the head from behind. Carter was subsequently brought to the hospital by ambulance where it was determined that as a result of the battery he had sustained a concussion. D.S was sixteen years old at time of the incident; Carter was nineteen years old.
On Saturday, March 12, 2016, at 12:30 P.M., New Orleans Police Officer Terry Bean was directed by Lieutenant M. Brenckle via two-way radio to meet him at the intersection of Kerlerec Street and North Galvez Street, in reference to a simple battery that had occurred in the 2000 block of St. Bernard Avenue. Lieutenant Brenckle stated that he was flagged down by Tatiyana Williams ("Williams"). Williams advised Lieutenant Brenckle her friend Carter had been jumped. She also advised him that Carter could be found at the intersection of North Broad and Esplanade Avenue. Based on his complaints and injuries, Carter was transported to University Hospital by an EMS Unit.
Officer Bean relocated to University Medical Center where he spoke to Carter about the incident. Carter told Officer Bean that he was walking northbound in the 2000 block of St. Bernard Avenue when he was approached by D.S. Carter said that D.S. questioned him about an incident that had occurred on March 11, 2016, the night before. He said that he ignored D.S. and continued to walk, at which point D.S. struck him with a closed fist to the back of his head, causing him to fall to the ground. He said that after he fell to the ground D.S. kicked him in the back several times. He then got up, ran away from D.S. and went to the intersection of North Broad Street and Esplanade Avenue. Officer Bean did not see any visible signs of injury but noted that Carter complained of pain to his neck and back. Carter remained at that location until he was treated by an EMS and transported to University Medical Center.
After interviewing Carter at University Medical Center and learning that D.S. was the perpetrator, Officer Bean went in search of D.S. Based on his familiarity with D.S., from patrolling the neighborhood, Officer Bean went to D.S.'s residence. At the residence, Officer Bean spoke to D.S.'s mother L.B. L.B. confirmed that D.S. was also known by the nickname of "Lucky."[1] Officer Bean and L.B. went to the 2400 block of New Orleans Street where D.S. was found. After questioning D.S., with L.B. being present and without objection from L.B., D.S. was taken into custody and placed under arrest. D.S. was then transported to the Juvenile Bureau where he was processed.
STANDARD OF REVIEW
In order to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. La. Ch.C. art. 883. The standard for the State's burden of proof in a juvenile delinquency proceeding is "no less strenuous then [sic] the standard of proof required in a criminal proceeding against an adult." State ex rel. C.B. , 2009-1114, p.6 (La. App. 4 Cir. 12/16/09), 28 So.3d 525, 528 (citing State in the Interest of A.G. , 630 So.2d 909, 910 (La. App. 4th Cir.1993) ). As a court of review, we grant great deference to the juvenile court's factual findings, credibility determinations, and assessment of witness testimony. State ex rel. W.B. , 2008-1458, p.1 (La. App. 4 Cir. 4/22/09), 11 So.3d 60, 61.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the *1213 evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard of review is applicable in juvenile delinquency cases. State ex rel. T.E. , 2000-1810, p.4 (La. App. 4 Cir. 4/11/01), 787 So.2d 414, 417.
In addition, La. Const. art. V, § 10 (B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. "While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless civil in nature." State ex rel. D.R. , 2010-0405, p.5 (La. App. 4 Cir. 10/13/10), 50 So.3d 927, 930. (Emphasis supplied). "Therefore, as in the review of civil cases, a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong." State in Interest of K.G. , 2011-1559, p.4 (La. App. 4 Cir. 3/21/12), 88 So.3d 1205, 1207 (citing State in the Interest of Batiste , 367 So.2d 784 (La. 1979) ; State in the Interest of S.S. , 557 So.2d 407 (La. App. 4th Cir.1990) ; State ex rel. E.D.C., 39,892 (La. App. 2 Cir. 5/11/05), 903 So.2d 571 ) ). In sum, we apply the "clearly wrong-manifest error" standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt.
ERROR PATENT
This Court adopted the practice of conducting a review of juvenile matters for errors patent. See State in the Interest of S.J. , 2013-1025, p.4 (La. App. 4 Cir. 11/6/13), 129 So.3d 676, 679. We have reviewed the record in this matter and found no errors patent.
ASSIGNMENTS OF ERROR
The appellant raises three assignments of error: (1) The trial court erred in denying the defense's motion to exclude the in-court identification by the victim; (2) The trial court erred in denying the defense's motion to suppress statements made by D.S.; (3) The trial court erred in adjudicating D.S. delinquent of simple battery because the evidence was insufficient to sustain an adjudication.
In his first assignment of error the appellant asserts that the trial court erred in denying his motion in limine to exclude the in-court identification by the victim. Essentially, the appellant argues that the police fed the victim his name creating a risk for misidentification. This argument is without merit.
The opportunity to cross-examine a witness about his or her in-court identification of the appellant as the perpetrator of a crime will ordinarily cure any suggestiveness of such identification. State v. Laster , 44,870, p.11 (La. App. 2 Cir. 2/3/10), 33 So.3d 259, 267.
In the case sub judice , Carter took the stand and testified that he knew D.S.; albeit, throughout direct and cross examination there were some inconsistencies as to how D.S. and his nickname ("Lucky") were correlated for purpose of identification. Carter stated that he knew D.S. by the name "Lucky." D.S's mother L.B. confirmed to Officer Bean that D.S.'s nickname was "Lucky." Carter also knew D.S. from a prior altercation as "Lucky." Carter also knew D.S.'s sister, R.S. Carter stated that R.S. helped him after the altercation on St. Bernard Avenue.
Defense counsel called R.S. to testify. She identified her brother in court and testified that her brother was involved in the altercation with Carter. Officer Bean testified that there were no pre-trial identification *1214 procedures; no lineups, no show-ups or confirmation photos.
Williams testified that she saw D.S. striking Carter although she was approximately one block ahead of Carter when the incident occurred. It is ludicrous for the defense to assert that there was some suggestiveness that created a chance of misidentification in court. The victim may have known the defendant as "Lucky" instead of D.S. but it was established that D.S. also went by the name "Lucky". Carter identified D.S. in open court as the person who battered him. Furthermore, the issue of identity is mooted by the fact that D.S.'s counsel had ample opportunity and ability to cross-examine all of the State's witnesses. The appellant has failed to prove that he was prejudiced by the in-court identification. There is no merit to this assignment of error.
In the appellant's second assignment of error he argues that the trial court erred in denying his motion to suppress his statements.
The appellant contends that the admission of his statement to Officer Bean, that he was involved in a fight with Carter, is tantamount to reversible error because he was not Mirandized pursuant to Miranda v. Arizona , 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the Juvenile Court erred in finding that the appellant was not in custody or under arrest at the time of his questioning.
We note that procedurally the appellant failed to follow La. C.Cr. P. art. 703. A motion to suppress evidence must be filed under the provisions of La. C.Cr. P. art. 521, which requires that "Pre-trial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate." The appellant did not file his motion to suppress statement until the day of trial. Nevertheless, the Juvenile Court elected to make a ruling during trial as to the statement.
During the course of the trial, there was argument and speculation about a body camera video and its content. However, this Court is not privy to this camera footage because it was not introduced into evidence where a full examination of the facts and circumstances surrounding D.S's statement could be examined. The body camera footage from Officer Bean's body camera was provided to the defense. During trial, defense counsel acquiesced that she had seen the body camera footage when she said, "It doesn't show when he was actually--it just shows the part where he's in the police car. It doesn't show when he was taken into custody, so there's no--there was prior to that." However, although referenced, the body camera footage is not in evidence or in the record before this Court.
According to La. C.Ch. art. 881.1 (A), the State carries the burden of proving beyond a reasonable doubt that a juvenile's confession was given freely and voluntarily. Miranda only applies if three conditions are met: (1) the defendant is in "custody" or significantly deprived of freedom, (2) there is an "interrogation," and (3) the interrogation is conducted by a "law enforcement officer" or someone acting as their agent. State v. Bernard , 2009-1178, p.5 (La. 3/16/10), 31 So.3d 1025, 1029. Here, it is not disputed that D.S. was not Mirandized . Officer Bean testified that he did not Mirandize D.S. The obligation to provide Miranda warnings attaches only when a person is questioned by law enforcement after he has been taken "into custody or otherwise deprived of his freedom of action in any significant way." State v. Robertson , 2017-0398, p.3 (La. App. 4 Cir. 5/12/17), 219 So.3d 1125, 1127, writ denied , 2017-0969 (La. 3/9/18), 237 So.3d 522 (citing Miranda v. Arizona ). "[A]
*1215 mere detention does not trigger the need for Miranda warnings, and the use of handcuffs does not necessarily escalate a detention into a state of being 'in custody' for Miranda purposes." State v. Barabin , 2013-0334, p.6 (La. App. 4 Cir. 9/11/13), 124 So.3d 1121, 1124.
A Louisiana Supreme Court case, State v. Fernandez , 1996-2719 (La. 4/14/98), 712 So.2d 485, gives guidance to this issue by requiring a more in-depth totality of the circumstances analysis as to juvenile defendants; however, it does not abrogate the basic tenets of a "custody vs. in custody" legal analysis. In this case, the Juvenile Court found that D.S. was not under arrest nor did Officer Bean conduct a custodial interrogation at the time D.S. made statements. We again reiterate that the appellant's mother was present the entire time. Officer Bean testified that the appellant's mother knew that D.S. had the right to remain silent and that he had informed her that he was going to ask D.S. some questions. She gave Officer Bean permission to question D.S. in her presence. Officer Bean stated that he would not have asked D.S. any questions without the mother's approval and presence.
The crux of the appellant's argument is that D.S.'s statements should have been ruled inadmissible and that to admit them was reversible error.
The erroneous admission of a defendant's involuntary confession is subject to harmless error analysis. Arizona v. Fulminante , 499 U.S. 279, 285, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In Fulminante , the United States Supreme Court held that the admission into evidence of an involuntary confession during trial is a "trial error." 499 U.S. at 309, 111 S.Ct. 1246. Trial error may be "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." State v. Harris , 2011-0941, pp. 19-20 (La. App. 4 Cir. 8/2/12), 98 So.3d 903, 917. The evidentiary issues presented in this record preclude a fully competent Miranda analysis as to whether the defendant was in custody at the time Officer Bean questioned him. Here the Juvenile Court clearly looked at the totality of the circumstances before making a credibility determination and ultimately finding that the statements were admissible. To further support the Juvenile Court's decision, the record reflects that there were three witnesses who testified that they had witnessed the incident, all placing both the defendant and the victim at the scene. All witnesses acknowledged that there was some sort of altercation between the victim and the appellant. Williams testified that she saw D.S. strike Carter. R.S., D.S.'s sister, provided testimony that placed D.S. at the scene and implicated him in the altercation. Carter identified D.S. as the perpetrator that hit him from behind, without his consent. There is no question that there was an altercation between the appellant and the victim; the only question that remained was whether the fight was consensual. Additionally, D.S.'s statement to Officer Bean placed him at the scene and involved him in the altercation. The testimony of an interviewing police officer alone may be sufficient to prove the juvenile's statement was given freely and voluntarily. State in the Interest of J.M. , 1999-1271, p.6 (La. App. 4 Cir. 6/30/99), 743 So.2d 228, 231. The Juvenile Court heard all of the evidence and testimony adduced at trial and as the sole trier of fact concluded that D.S. was guilty as charged of simply battery upon Carter. The appellant has failed to prove that he was prejudiced or that there was error in this ruling.
We find that the evidence adduced at trial, exclusive of D.S.'s statements, was sufficient to convince a rational trier of *1216 fact beyond a reasonable doubt that D.S. was guilty of simple battery. Nothing in the record indicates that the factual determinations and credibility assessments by the Juvenile Court was attributable to D.S.'s statement. Therefore, any error in the Juvenile Court's judgment denying the defense's motion to suppress the statement is harmless. There is no merit to this assignment of error.
Finally, the appellant asserts that the trial court erred in adjudicating D.S. delinquent, arguing that there was an insufficiency of evidence to sustain an adjudication of delinquency for the charge of simple battery.
Essentially, the same analysis is applicable to this assignment of error as in Assignment of Error Two. There was ample evidence for the Juvenile Court to adjudicate the defendant delinquent.
Adjudication for a simple battery requires that the State prove that D.S. intentionally used force or violence upon Carter without his consent. La. R.S. 14:33 ; La. R.S. 14:35. Striking someone is sufficient to constitute the use of force or violence upon another, especially, as in this case, when the blow has enough force to knock the victim to the ground. State in re J.A. , 2015-641, p.7 (La. App. 3 Cir. 12/2/15), 179 So.3d 959, 963.
The testimony of the victim alone is generally sufficient to establish the lack of consent to a simple battery. Id. at 964. "Consent is the '[a]greement, approval, or permission as to some act or purpose' and may be expressed or implied, i.e. inferred from conduct." Id. (quoting State in the Interest of C.J. , 2014-241, p.3 (La. App. 4 Cir. 7/23/14), 153 So.3d 467, 469 ).
In the instant matter, it is undisputed that there was an altercation between D.S. and Carter. The only real issue is whether Carter knowingly engaged in a fight and consented to the battery. Carter testified that he was struck in the back of the head and kicked in the back while on the ground. D.S.'s sister R.S., testified that there was a fight and that both the victim and the appellant were involved. The Juvenile Court made a credibility call and determined that the victim's testimony was more credible than the appellant's sister.
The trial court clearly found that there was sufficient evidence adduced at trial to adjudicate the defendant delinquent. We will not disturb the Juvenile Court's judgment.
Accordingly, based on the record before us and applicable jurisprudence, we affirm the appellant's conviction and sentence.
AFFIRMED

Carter had stated that he knew the perpetrator as "Lucky."